1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ORAH LEE PRESLEY III,

               Plaintiff,

      v.

GARDNER M. TORRENCE, SR. and
JAMES M. TROUT II,

               Defendants.

CASE NO. C13-5040 BHS

ORDER GRANTING
DEFENDANTS' MOTION
TO DISMISS

This matter comes before the Court on Defendants Gardner Torrence, Sr. ("Torrence") and James F. Troutt II's ("Troutt") motion to dismiss Plaintiff Orah Lee Presley III's ("Presley") amended complaint (Dkt. 27). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On January 18, 2013, Presley filed a complaint against Defendants alleging wrongful suspension from M. W. Prince Hall Grand Lodge of Washington ("the Grand Lodge") and violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961, *et seq.*. *See* Dkt. 1. Defendants filed a motion to dismiss on February 26, 2013. Dkt. 10. Presley filed a response on March 13, 2013. Dkt 16. Defendants

filed a reply on March 18, 2013.  Dkt. 18.  On April 1, 2013, Presley improperly and

untimely filed a reply to Defendants' motion (Dkt. 22), a reply memorandum (Dkt. 21),

and a proposed order (Dkt. 23).  Because these pleadings were improperly filed, the

Court did not consider them in deciding the motion.

On April 8, 2013 the Court granted Defendants' motion to dismiss Presley's RICO

claim for failure to state a claim on which relief can be granted but permitted leave to

amend. Dkt. 25 at 6.  As to Presley's wrongful suspension claim, the Court also granted

Defendants' motion to dismiss for lack of jurisdiction because the uncontroverted record

established that Presley did not appeal the decision of Grand Master Torrence to suspend

him from the Grand Lodge at the Annual Communication.  *Id*. at 7.

On April 19, 2013, Presley filed an amended complaint. Dkt. 26.  On April 24,

2013, Defendants filed the instant motion to dismiss.  Dkt. 27.  On May 10, 2013, Presley

filed a response in opposition.  Dkt. 28.  On May 13, 2013, Defendants filed a reply.  Dkt.

29.

## II. FACTUAL BACKGROUND

**A.      The Parties**

Presley is a suspended member of the Grand Lodge.  Dkt. 26 at 2.  Torrence is the

Grand Master of the Grand Lodge and Troutt is the Grand Secretary of the Grand Lodge.

*Id*.  All three men are citizens of Washington State.  *Id*. at 1.

**B.      Masonic Rules and Regulations**

The Grand Lodge, which is not a party to this suit, is a Washington nonprofit

corporation and Freemason Grand Lodge.  Dkt. 11 at 1.  Masonic rules are set forth in the

1  1903 Grand lodge Constitution and Bylaws.  *Id*. at 2.  Under Article 3 of the constitution,

2  the Grand Lodge must hold an annual meeting of all its members, called the Annual

3  Communication, on the second Monday of July every year.  *Id*. at 5.  The Annual

4  Communication is also known as the "Grand Lodge in Session."  Dkt. 10 at 4.  According

5  to its constitution, the Grand Master possesses almost total control over the Grand Lodge;

6  however, every decision made by the Grand Master must ultimately be approved by the

7  votes of the entire membership at the Annual Communication.  Dkt. 11 at 8.

8       In addition to being required to approve the Grand Master's decisions, Article 11

9  of the constitution makes clear that the Grand Lodge in Session has "supreme, inherent

10  and absolute legislative, judicial and executive Masonic authority and power . . . ."  *Id*. at

11  7.  Furthermore, Article 12, Section 14, confirms that the Grand Lodge in Session has the

12  power to decide all appeals by members of any decisions.  *Id*. at 8.  In addition, Article

13  15, Section 15.08, of the constitution states that members must exhaust Masonic remedies

14  before initiating any civil action.  *Id*. at 12.  Finally, the Grand Lodge Bylaws, Title 207,

15  specifies that appeals shall be submitted to the Grand Lodge in Session for review of

16  "judgments, orders, verdicts, decisions or sentences . . . in any disciplinary proceedings . .

17  . ."  *Id*. at 22.

18  **C.    Presley's Amended Complaint**

19       On November 7, 2013, Torrence, in his role as the Grand Master, suspended

20  Presley from the Grand Lodge "for … repetitive detrimental and unwarranted comments

21  toward this office and ultimately a blatant form of 'Contumacy' toward the Office of the

22

1   Grand Master." Dkt. 26 at 16.  Since being suspended, Mr. Presley has not taken any

2   action to appeal Torrence's decision within the Grand Lodge.

3        On March 1, 2013, the Grand Lodge, through Defendants, sent a letter via the

4   United States mail to Presley.  *Id*. at 29-30. In brief, the letter indicated that purusant to

5   the Masonic constitution, Article 15 – Subordinate Lodges, Section 15.08, Presley is

6   suspended indefinitely until his civil suit has concluded.  *Id*. at 30.  The allegations in

7   Presley's amended complaint appear to hinge almost entirely on this March 1, 2013

8   letter.

9        Based on the March 1, 2013 letter, Presley's amended complaint alleges the

10  Defendants committed (1) mail fraud pursuant to 18 U.S.C. § 1341 by sending the letter;

11  (2) perjury pursuant to 18 U.S.C. § 1621 because the contents of letter demonstrate that

12  Torrence perjured in his prior declaration to this Court; and (3) violations of the RICO for

13  a pattern of activities, including the aforementioned alleged acts of "mail fraud" and

14  "perjury."  *See* Dkt. 25.  Presley attaches exhibits to his amended complaint, which

15  reference specific documents in his amended complaint.  *See id.* at 10-30.

### III. DISCUSSION

**A.    Legal Standards**

**1.    Federal Rule of Civil Procedure 12(b)(6)**

19       Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a

20  claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To survive a Rule

21  12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief

22  that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

1   This "facial plausibility" standard requires the plaintiff to allege facts that add up to

2   "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,*

3   556 U.S. 662, 678 (2009).  The court must assume that the plaintiff's allegations are true

4   and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los*

5   *Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept

6   as true "allegations that are merely conclusory, unwarranted deductions of fact, or

7   unreasonable inferences."  *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir.

8   2008).

9        Pro se complaints are held to "less stringent standards than formal pleadings

10  drafted by lawyers."  *Haines v. Kerner,* 404 U.S. 519, 520 (1972).  Where the petitioner

11  is pro se, the court has an obligation, particularly in civil rights cases, to construe the

12  pleadings liberally and to afford the petitioner the benefit of any doubt.  *Bretz v. Kelman,*

13  773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc).  Nonetheless, a pro se plaintiff must

14  allege facts sufficient to allow a reviewing court to determine that a claim has been

15  stated.  *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).

16       If a court dismisses a complaint under Rule 12(b)(6), it must then decide whether

17  to grant leave to amend.  The Ninth Circuit has "repeatedly held that a district court

18  should grant leave to amend even if no request to amend the pleading was made, unless it

19  determines that the pleading could not possibly be cured by the allegation of other facts."

20  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation

21  marks omitted).

22

1    Material properly submitted with the complaint in compliance with Fed. R. Civ. P.

2   10(c) may be considered as part of the complaint for the purposes of a 12(b)(6) motion.

3   *See Hall Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F. 2d 1542, 1555 (9th

4   Cir. 1990).  The documents attached to Presley's complaint meet the requirements of Fed.

5   R. Civ. P. 10(c).[1]

6   **B.    Application of Legal Standard**

7    Presley alleges three claims.  The first is that Defendants violated the mail fraud

8   statute, 18 U.S.C. § 1341, when using the United States mail to send fraudulent or false

9   suspension notices to him.  The second is that Defendants committed perjury pursuant

10  to18 U.S.C. § 1621 when Torrence filed a declaration stating that Presley would be

11  allowed to appeal his suspension at "the next Annual Communication Meeting [which]

12  will be held in July.  Although Mr. Presley has not filed an appeal of his suspension to the

13  Grand Lodge, it is not too late for him to do so."  Dkt. 26 at 6 (*citing id*. at 26).  The third

14  is that Defendants violated RICO, 18 U.S.C. 1961, *et seq.*, by committing the

15  aforementioned predicate acts.

---

[1] Fed. R. Civ. P. 10(c) states:
Adoption By Reference; Exhibits.  A statement in a pleading may be adopted by
reference elsewhere in the same pleading or in any other pleading or motion.  A
copy of a written instrument that is an exhibit to a pleading is a part of the pleading
for all purposes.

1  **1.     Perjury**

2       Under 18 U.S.C. § 1621, perjury is a criminal offense providing for criminal fines

3  and/or imprisonment.  To the extent that Presley alleges perjury as an independent cause

4  of action under this statute, no private cause of action exists under 18 U.S.C. § 1621.  *See*

5  18 U.S.C. 1621; *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S.

6  164, 190 (1994) (refusing to infer private right of action from bare criminal statute);

7  *Fuller v. Unknown Officials from the Justice Dept. Crime Div.*, 387 F. App'x 3, 4 (D.C.

8  Cir. 2010) (there is no private cause of action for perjury under 18 U.S.C. § 1621). Thus,

9  the Court has no jurisdiction over this claim. Fed. R. Civ. P. 12(b)(1).

10      However, Presley appears to be attempting to allege perjury as one of the predicate

11 offenses required to plead or prove a RICO violation.  *See* 18 U.S.C. § 1961. To the

12 extent which he alleges Defendants committed perjury as a predicate act to support his

13 claim for RICO violations, the Court will consider that claim below. *See infra*.

14 **2.     Mail Fraud**

15      Under 18 U.S.C. § 1341, mail fraud is a criminal offense.  To the extent that

16 Presley alleges he has an independent cause of action for mail fraud against Defendants,

17 no private cause of action exists for this criminal action. *See Wilcox v. First Interstate*

18 *Bank,* 815 F.2d 522, 533 n. 1 (9th Cir.1987) (recognizing that no private right of action

19 exists under 18 U.S.C. § 1341). Thus, the Court has no jurisdiction over this claim. Fed.

20 R. Civ. P. 12(b)(1).

21      However, Presley appears to be attempting to allege mail fraud as one of the

22 predicate offenses required to plead or prove a RICO violation.  *See* 18 U.S.C. § 1961. To

1  the extent which he alleges Defendants committed perjury as a predicate act to support

2  his claim for a RICO violation, the Court will also consider that claim below. *See infra*.

3  **3.    RICO**

4  The elements of a RICO claim are (1) conduct (2) of an enterprise (3) through a

5  pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496

6  (1985). The failure to establish any of these elements is fatal to a RICO claim.  *See Rae v.*

7  *Union Bank*, 725 F.2d 478, 480–81 (9th Cir.1984) (affirming Rule 12(b) dismissal of

8  RICO claim where plaintiff failed to meet the "enterprise" requirement).

9  RICO defines the term "pattern of racketeering activity" as requiring "at least two

10  acts of racketeering activity ... the last of which occurred within ten years ... after the

11  commission of a prior act of racketeering activity." RICO, 18 U.S.C. § 1961(5) (1994).

12  Aside from the minimal requirement of showing two predicate acts existed, RICO

13  nowhere addresses the meaning of the term "pattern" as used throughout the statute. In

14  *H.J. Inc. v. Northwestern Bell Telephone Company*, the Supreme Court sought to develop

15  a meaningful concept of that term. 492 U.S. 229 (1989).  "[T]o prove a pattern of

16  racketeering activity a plaintiff or prosecutor must show that the racketeering predicates

17  are related, and that they amount to or pose a threat of continued criminal activity."

18  *Northwestern Bell*, 492 U.S. at 239.  Thus, the determination of whether a RICO plaintiff

19  is able to establish a pattern of racketeering activity necessarily entails an initial

20  determination of whether the defendants committed two or more predicate acts within the

21  meaning of the RICO statute, *see* 18 U.S.C. § 1961(5) (1994), and, if so, whether the

22

1   predicate acts were related in a manner such that they created a threat of continued

2   unlawful activity. *Northwestern Bell*, 492 U.S. at 239–43.

3        In 18 U.S.C. § 1961(1), Congress has enumerated the predicate acts which may

4   form a basis for a RICO claim.  Section 1961(1) lists five different categories of criminal

5   offenses that could potentially constitute predicate acts.  Subsection (A) provides that

6   "any act or threat" involving a variety of criminal offenses "which is chargeable" under

7   state law may serve as a RICO predicate. 18 U.S.C. § 1961(1)(A) (1994).  Subsection (B)

8   provides that "any act which is indictable" under any of a variety of enumerated federal

9   criminal statutes may serve as a RICO predicate. 18 U.S.C. § 1961(1)(B) (1994). Courts

10  have concluded that perjury under 18 U.S.C. § 1621 constitutes a predicate act because

11  acts of perjury are indictable under the obstruction of justice statute, 18 U.S.C. § 1503,

12  and RICO specifies that acts indictable under that statute, where the alleged acts took

13  place in federal court, qualify as predicate acts. *See Streck v. Peters et. al*, 885 F. Supp.

14  1165, 1162 (1994) (interal citations omitted). Mail fraud under 18 U.S.C. § 1341 is also a

15  predicate act.

16              **a.    Perjury: Alleged Filing of Knowingly False Declaration**

17       Regarding perjury generally, 18 U.S.C. §1621 states that:

18       (2) in any declaration, certificate, verification, or statement under penalty of
         perjury as permitted under section 1746 of title 28, United States Code,
19       willfully subscribes as true any material matter which he does not believe to
         be true.

20       Based on the information before the Court, the statement made by Torrence in his

21  declaration does not constitute perjury, as Presley alleges.  Presley argues that Torrence

22

1 filed his declaration stating that Presley would be allowed to appeal his suspension at "the

2 next Annual Communication Meeting [which] will be held in July. Although Mr. Presley

3 has not filed an appeal of his suspension to the Grand Lodge, it is not too late for him to

4 do so." Dkt. 26 at 6 (*citing id*. at 26). Then, according to Presley, on March 1, 2013, "a

5 mere 3 days after [Torrence] made the Declaration, [he] knowingly denied Plaintiff the

6 opportunity for Plaintiff to appeal by suspending him indefinitely…." *Id*.  While

7 Torrence's declaration does indicate that Presley has a right to appeal his November 2012

8 suspension at the Annual Communications (Dkt. 26 at 26) and his March 1, 2013 letter

9 also indicates Presley is indefinitely suspended until these court proceedings conclude,

10 the March 1, 2013 letter makes no representations about Presley's ability to either attend

11 the July 2013 annual meeting or whether he can appeal either one or both suspensions at

12 that time. *See id*. at 29-30.  As Defendants point out, Presley's right to appeal still exists

13 under Article 12, Section 14 of their constitution.  Dkt. 27 at 4 (*citing* Dkt. 11 at 8).

14 Presley fails to allege sufficient facts that Torrence alone or in concert with Troutt

15 committed perjury for the purposes of a RICO violation.

16        Because perjury has not been committed and thus Presley has failed to properly

17 allege two predicate acts to satisfy the pattern element of a RICO claim, the Court could

18 end its analysis here. However, the Court will take this opportunity to identify some of

19 the other deficiencies in Presley's amended complaint.

20            **b.    Mail Fraud**

21        "Mail fraud has two elements: (1) having devised or intending to devise a scheme

22 to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the

1  purpose of executing, or attempting to execute, the scheme (or specified fraudulent

2  acts)." *United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009) (internal quotation

3  marks and citations omitted). "A participant in a scheme to defraud is liable for acts of

4  mail or wire fraud committed by co-schemers, provided those acts took place during the

5  life of the scheme and ... were reasonably foreseeable as a necessary and natural

6  consequence of the fraudulent scheme." *United States v. Green*, 592 F.3d 1057, 1070 (9th

7  Cir. 2010) (internal quotation marks omitted).

8         Presley maintains Defendants committed mail fraud using the United States

9  Postal Service to send him the November 12, 2012 notice of suspension and the March 1,

10  2013 notice of indefinite suspension, which in combination with Torrence's declaration

11  allegedly evidence perjury, allegedly make the notices "fraudulent or false" in nature.

12  *See id.* 26 at 5-8.  Because the Court finds that the Defendants did not engage in perjury

13  in connection with these notices, the Court also finds that Presley's amended complaint

14  does not, and cannot by further amendment, successfully allege a claim for mail fraud.  In

15  this case, the United States mail was not used to execute a fraudulent scheme or act

16  against Presley; rather, it was used to notify him that he was suspended from the Grand

17  Lodge and state the reasons for that suspension.

18         To the extent that Presley attempts to plead that the November 7, 2012 letter

19  suspending him was fraudulently sent through the mail because he was knowingly

20  suspended without due process, independently of the March 1, 2013 letter or not, the

21  Court has already ruled on this issue when in it dismissed Presley's wrongful suspension

22  claim for lack of subject matter jurisdiction.  In relevant part, the Court found:

1           In addition to Presley's RICO claim, the complaint, if construed liberally, includes an allegation that Defendants wrongfully suspended

2    Presley's contractual membership from the Grand Lodge.  "As a general rule, courts refrain from interfering in the internal affairs of voluntary

3    associations."  *Anderson v. Enterprise Lodge No. 2*, 906 P.2d 962 (Wash. App. 1995).  This judicial policy of non-interference is especially strong

4    where fraternal organizations are concerned:

       Fraternities . . . involve primarily an element of fellowship and
5           association which falls outside the law and the review of the courts.
       This element can have played no small part in the trend of the
6           decisions touching the court's attitude toward the internal workings
       of such organizations.

7    *Washington Local Lodge No. 104 v. International Board of Boilermakers*, 183 P.2d 507, 510 (Wash. 1947).  In *Lodge No. 104*, the court stated that

8    exhaustion of internal remedies is a jurisdictional requirement when a member's dispute with a voluntary association is "of a nonfinancial,

9    internal, and disciplinary nature."  *Id.* at 509.

       Here, the Constitution of the Grand Lodge unambiguously requires
10   Presley to exhaust the remedies provided "by the Constitution, laws and regulations of this Grand Lodge" before filing a civil lawsuit.  Dkt. 11 at

11   12.  The uncontroverted record establishes that Presley did not appeal the decision of Grand Master Torrence to suspend him from the Grand Lodge

12   to the Annual Communication.  For this reason, the Court lacks jurisdiction to adjudicate this matter and therefore dismisses the wrongful suspension

13   claim.

14   Dkt. 25 at 7.  Thus, if Presley is effectively attempting to allege that he was wrongfully or

15   fraudulently suspended on the bases of either letter, nothing in Presley's amended

16   complaint changes this Court's prior legal conclusion that it has no jurisdiction over these

17   matters.

18

19

20

21

22

1

### IV. ORDER

2    Therefore, it is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 27) is

3    **GRANTED**, and the case is closed.

4    Dated this 19th day of June, 2013.

5

6

7    BENJAMIN H. SETTLE
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 13